THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KING COUNTY,

Plaintiff,

v.

BP P.L.C., a public limited company of
England and Wales, CHEVRON
CORPORATION, a Delaware corporation,
CONOCOPHILLIPS, a Delaware
corporation; EXXON MOBIL
CORPORATION, a New Jersey corporation,
ROYAL DUTCH SHELL PLC, a public
limited company of England and Wales, and
DOES 1 through 10,

Defendants.

Case No. 2:18-cv-00758-RSL

**DEFENDANTS' MOTION TO
DISMISS FIRST AMENDED
COMPLAINT [12(B)(6)]**

NOTE ON MOTION CALENDAR:

November 8, 2021

ORAL ARGUMENT REQUESTED

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................................ 1

II.   BACKGROUND ................................................................................................................. 5

III.  LEGAL STANDARD ........................................................................................................ 7

IV.   ARGUMENT ..................................................................................................................... 8

      A.   Plaintiff's Claims Are Necessarily Governed By Federal Common Law
           Because They Implicate Federal Interests That Necessitate A Uniform
           Rule Of Decision, And Federal Law Provides Plaintiff With No
           Remedy ................................................................................................................... 8

           1.   Plaintiff's Claims Are Exclusively Governed By Federal Law. ............ 9

           2.   Plaintiff's Claims Targeting Domestic Emissions Are Displaced
                By The Clean Air Act ........................................................................... 12

           3.   Plaintiff's Claims Targeting Foreign Emissions Are
                Impermissibly Extraterritorial. ............................................................ 15

      B.   In The Alternative, Plaintiff's Common-Law Claims Are Preempted By
           The Clean Air Act And The Foreign Affairs Power Because They Stand
           As An Obstacle To The Accomplishment Of Federal Objectives. .................... 16

      C.   The Complaint Does Not Satisfy Federal Rule Of Civil Procedure 9(b) ......... 22

      D.   The Court Should Dismiss The Complaint With Prejudice. ............................. 26

V.    CONCLUSION ................................................................................................................ 26

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

i

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Elec. Power Co. v. Connecticut,*
  564 U.S. 410 (2011) ............................................................................................... *passim*

*American Ins. Ass'n v. Garamendi,*
  539 U.S. 396 (2003) ...................................................................................................7, 20, 21

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...........................................................................................................7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...........................................................................................................7

*Bell v. Cheswick Generating Station,*
  734 F.3d 188 (3d Cir. 2013) ...........................................................................................19, 20

*Benanav v. Healthy Paws Pet Ins., LLC,*
  495 F. Supp. 3d 987 (W.D. Wash. 2020) ......................................................................23, 24

*Bly-Magee v. California,*
  236 F.3d 1014 (9th Cir. 2001) ...........................................................................................25

*BMW of N. Am. v. Gore,*
  517 U.S. 559 (1996) ...........................................................................................................7

*Bronzich v. Persels & Associates, LLC,*
  2011 WL 2119372 (E.D. Wash. May 27, 2011) ............................................................7, 23

*Bunker Hill Co. Lead & Zinc Smelter v. U.S. Environmental Protection Agency,*
  658 F.2d 1280 (9th Cir. 1981) ...........................................................................................17

*California v. Gen. Motors Corp.,*
  2007 WL 2726871 (N.D. Cal. Sept. 17, 2007) ...................................................................5

*Cervantes v. Countrywide Home Loans,*
  656 F.3d 1034 (9th Cir. 2011) ...........................................................................................26

*City of Milwaukee v. Illinois & Michigan,*
  451 U.S. 304 (1981) ...........................................................................................................9, 12

*City of New York v. BP p.l.c.,*
  325 F. Supp. 3d 466 (S.D.N.Y. 2018) ...............................................................................1

*City of New York v. BP p.l.c.,*
  993 F.3d 81 (2d Cir. 2021) ............................................................................................ *passim*

*City of Oakland v. BP PLC,*
  325 F. Supp. 3d 1017 (N.D. Cal. 2018) ............................................................1, 5, 14, 22

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

ii

**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

*Clark v. Eddie Bauer LLC*,
 2021 WL 1222521 (W.D. Wash. Apr. 1, 2021) ...................................................25

*Comer v. Murphy Oil USA, Inc.*,
 839 F. Supp. 2d 849 (S.D. Miss. 2012) ...............................................................19

*Cooper v. Pickett*,
 137 F.3d 616 (9th Cir. 1997) .................................................................................7

*N.C. ex rel. Cooper v. TVA*,
 615 F.3d 291 (4th Cir. 2010) ...............................................................................19

*Crosby v. Nat'l Foreign Trade Council*,
 530 U.S. 363 (2000) ..................................................................................15, 16, 21

*Depot, Inc. v. Caring for Montanans, Inc.*,
 915 F.3d 643 (9th Cir. 2019) ...............................................................................24

*Illinois v. City of Milwaukee*,
 406 U.S. 91 (1972) ...............................................................................................9, 12

*Int'l Paper Co. v. Ouellette*,
 479 U.S. 481 (1987) ....................................................................................... *passim*

*Jesner v. Arab Bank, PLC*,
 138 S. Ct. 1386 (2018) ......................................................................................15, 16

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) .....................................................................23, 24, 25

*Kiobel v. Royal Dutch Petroleum Co.*,
 569 U.S. 108 (2013) ..............................................................................................15

*Manistee Town Ctr. v. City of Glendale*,
 227 F.3d 1090 (9th Cir. 2000) ..............................................................................25

*Massachusetts v. EPA*,
 549 U.S. 497 (2007) ..............................................................................................13

*Merrick v. Diageo Ams. Supply, Inc.*,
 805 F.3d 685 (6th Cir. 2015) ................................................................................19

*Michigan v. U.S. Army Corps of Eng'rs*,
 667 F.3d 765 (7th Cir. 2011) ................................................................................12

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
 663 F. Supp. 2d 863 (N.D. Cal. 2009) ...................................................................5

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
 696 F.3d 849 (9th Cir. 2012) ........................................................................ *passim*

*Nemykina v. Old Navy, LLC*,
 461 F. Supp. 3d 1054 (W.D. Wash. 2020) ...........................................................23

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

iii

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ................................................................................6

*Saldana v. Occidental Petroleum Corp.*,
  774 F.3d 544 (9th Cir. 2014) ..................................................................................7

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ................................................................................24

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
  451 U.S. 630 (1981) ........................................................................................9, 14

*United Food & Com. Workers Cent. Pennsylvania & Reg'l Health & Welfare
  Fund v. Amgen, Inc.*,
  400 F. App'x 255 (9th Cir. 2010) ..........................................................................25

*United States v. Belmont*,
  301 U.S. 324 (1937) ..............................................................................................20

*United States v. Pink*,
  315 U.S. 203 (1942) ..............................................................................................20

*Utility Air Regulatory Grp. v. Environmental Protection Agency*,
  573 U.S. 302 (2014) ..............................................................................................17

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ..........................................................................7, 23

*Xia Bi v. McAuliffe*,
  927 F.3d 177 (4th Cir. 2019) ................................................................................23

**Statutes**

33 U.S.C. § 1365(e) ......................................................................................................19

33 U.S.C. § 1370 ..........................................................................................................20

42 U.S.C. § 7401(a)(3) ..................................................................................................17

42 U.S.C. § 7410(a)(1) ..................................................................................................18

42 U.S.C. § 7411(d) ......................................................................................................18

42 U.S.C. § 7416 ....................................................................................................18, 20

42 U.S.C. § 7475(a)(2) ..................................................................................................18

42 U.S.C. § 7604(e) ......................................................................................................19

42 U.S.C. § 7607(d)(5) ..................................................................................................18

**Other Authorities**

Don C. Brunell, *Rethinking a natural gas ban in Washington state*, The
  Bellevue Reporter (Apr. 30, 2021), https://tinyurl.com/3m82whtc ........................2

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

iv

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Darragh Conway, *Loss and Damage: In the Paris Agreement* 3, Climate Focus
(Dec. 2015), https://tinyurl.com/y8yuuhqg ...........................................................................21

Press Release, Office of the Special Envoy for Climate Change – U.S.
Department of State, COP21 Press Availability with Special Envoy Todd
Stern (Dec. 4, 2015), https://tinyurl.com/pajd8zbr.........................................................21, 22

Saleemul Huq & Roger-Mark De Souza, *Not Fully Lost and Damaged: How
Loss and Damage Fared in the Paris Agreement*, Wilson Center
(Dec. 22, 2015), https://tinyurl.com/yd6fo2gk..................................................................21

*Statement by National Security Advisor Jake Sullivan on the Need for Reliable
and Stable Global Energy Markets*, The White House (Aug. 11, 2021),
https://tinyurl.com/9yxpya9c.......................................................................................................2

*The United States Officially Rejoins the Paris Agreement*, U.S. Department of
State (Feb. 19, 2021), https://tinyurl.com/3rvz367u ..........................................................21

**Rules**

Fed. R. Civ. P. 9(b).................................................................................................................7, 22

Fed. R. Civ. P. 12(b)(2) .............................................................................................................1

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

v

GIBSON, DUNN & CRUTCHER LLP

333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

### I.      INTRODUCTION

Plaintiff King County seeks to hold five out-of-state Defendants liable for the alleged effects of climate change, a global phenomenon that is at least partially the result of the worldwide accumulation of greenhouse gases in the atmosphere since the beginning of the Industrial Revolution.   Plaintiff's claims suffer from numerous defects that independently warrant their dismissal.  At the pleading stage, however, the Complaint should be dismissed with prejudice for one principal reason:  Because of their interstate and international reach, Plaintiff's claims are exclusively governed by federal law, and federal law does not allow courts to fashion common-law remedies for the alleged local impacts of global climate change.  This has been the holding of every court to consider the merits of a tort case against an out-of-state energy company for harms allegedly caused by global greenhouse gas emissions. *E.g.*, *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 429 (2011) ("*AEP*"); *City of New York v. BP p.l.c.*, 325 F. Supp. 3d 466, 476 (S.D.N.Y. 2018), *aff'd*, 993 F.3d 81 (2d Cir. 2021); *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 858 (9th Cir. 2012) ("*Kivalina II*"); *City of Oakland v. BP PLC*, 325 F. Supp. 3d 1017, 1028–29 (N.D. Cal. 2018), *reversed and remanded on jurisdictional grounds*, 960 F.3d 570, 586 (9th Cir. 2020), *opinion amended and superseded on denial of reh'g*, 969 F.3d 895 (9th Cir. 2020).

Although Plaintiff purports to bring its claims under Washington law, the claims are not limited to harms caused by fossil fuels extracted, sold, marketed, or used in Washington. Instead, Plaintiff attempts to use Washington's state tort law to impose liability for what Plaintiff deems to be "unsafe levels" of Defendants' worldwide energy production and sales activities, which it blames for society's "unlimited use in massive quantities" of fossil fuels.  Dkt. 113 ¶ 208 ("Compl.").  Under the guise of state tort law, Plaintiff targets Defendants' lawful products produced and sold worldwide, which countless individuals around the globe use to heat their

---

[1]  Defendants have separately moved to dismiss the Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  Defendants submit this motion subject to, and without waiver of, those additional defenses.

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

1

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

homes, power their schools, hospitals, and vehicles, produce and transport their food supplies, engage in commerce, and manufacture innumerable products essential to the safety, well-being, and advancement of modern society.

The Washington Legislature has long recognized the importance of oil and gas to Washington's citizens and economy, declaring it "in the public interest" to "promote the exploration, development, production, and utilization of oil and gas in the state . . . ."  RCW 78.52.001.  Indeed, even while the State has recently been legislating to address greenhouse gas emissions in some sectors, the State recognizes that the need for fossil fuels continues.  For example, earlier this year Washington lawmakers *rejected* a bill aimed at phasing out natural gas for space and water heating in new buildings.[2]

Federal policy also recognizes the critical need to supply the Nation's energy, even while pursuing initiatives to address global climate change.  In fact, just this month, in recognition that "[h]igher gasoline costs, if left unchecked, risk harming the ongoing global recovery," the Biden Administration called on OPEC+ nations to *increase* their fossil-fuel output:  "While OPEC+ recently agreed to production increases, these increases will not fully offset previous production cuts that OPEC+ imposed during the pandemic until well into 2022. At a critical moment in the global recovery, this is simply not enough."[3]  In doing so, "President Biden . . . made clear that he wants Americans to have access to affordable and reliable energy, including at the pump."[4]

Despite the vital role oil and gas have played in securing the safety and well-being of people in King County and worldwide, Plaintiff asks this Court to apply state law to the global production, promotion, distribution, and emissions of fossil fuels by holding a select group of

---

[2]  Don C. Brunell, *Rethinking a natural gas ban in Washington state*, The Bellevue Reporter (Apr. 30, 2021), https://tinyurl.com/3m82whtc.

[3]  *Statement by National Security Advisor Jake Sullivan on the Need for Reliable and Stable Global Energy Markets*, The White House (Aug. 11, 2021), https://tinyurl.com/9yxpya9c.

[4]  *Id.*

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

2

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

1   energy companies liable under Washington law for the climate impact of fossil fuel use.  This,

2   it cannot do.

3       The Second Circuit's recent decision affirming the dismissal of an action nearly identical

4   to Plaintiff's here is directly on point.  *City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir.

5   2021).  Represented by the same private law firm as Plaintiff here, the City of New York sued

6   the *exact same* Defendants, asserting *substantively identical* nuisance and trespass claims under

7   New York law stemming from the defendants' *exact same* production, promotion, and sale of

8   fossil fuels.  *Compare City of New York v. BP P.L.C.*, No. 1:18-cv-182-JFK, Dkt. 80 ¶¶ 132–53

9   ("*City of New York* Complaint"), *with King County v. BP P.L.C.*, No. 2:18-cv-758-RSL,

10  Dkt. 113 ¶¶ 204–26 ("Compl.").  Even a cursory review of the complaints quickly demonstrates

11  that both cases rely on *identical theories* of liability.

| City of New York Complaint ¶ 76 | King County Complaint ¶ 9 |
|---|---|
| "Defendants are substantial contributors to the climate change that is causing injury to the City and thus are jointly and severally liable. Defendants' cumulative production of fossil fuels over many years makes each Defendant among the top sources of GHG pollution in the world." | "Defendants are substantial contributors to the public nuisance of global warming that is causing injury to Plaintiff and thus are jointly and severally liable. Defendants' cumulative production of fossil fuels over many years places each of them among the top sources of global warming pollution in the world." |

18      In affirming dismissal, the Second Circuit boiled the case down to a fundamental

19  question:  "[W]hether municipalities may utilize state tort law to hold multinational oil

20  companies liable for the damages caused by global greenhouse gas emissions."  *City of New*

21  *York*, 993 F.3d at 85.  The Second Circuit's answer was unequivocal:  "Given the nature of the

22  harm and the existence of a complex web of federal and international environmental law

23  regulating such emissions, we hold that the answer is 'no.'"  *Id.*  As the Second Circuit explained,

24  the very nature of our constitutional system compels this result.  "Global warming presents a

25  uniquely international problem of national concern" that is "not well-suited to the application of

26  state law," and by "sidestep[ping] those [federal and international] procedures and instead

27  institut[ing] a state-law tort suit against five oil companies . . . , the City effectively seeks to

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

3

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

1    replace these carefully crafted frameworks—which are the product of the political process—

2    with a patchwork of claims under state nuisance law." *Id.* at 86.

3           The Second Circuit's analysis proceeds in three, straightforward steps.  *First*, the court

4    concluded that federal common law applied, rather than New York state law, because the

5    interstate and international nature of the claims, based on alleged harms from global emissions,

6    created an overriding need for a uniform federal rule of decision.  The Second Circuit explained

7    that "[f]or over a century, a mostly unbroken string of cases has applied federal law to disputes

8    involving interstate air or water pollution." *Id.* at 91.  The Second Circuit concluded that because

9    the City's claims "implicat[ed] the conflicting rights of [s]tates [and] our relations with foreign

10   nations," that "case pose[d] the *quintessential example* of when federal common law is needed."

11   *Id.* at 92 (emphasis added).  *Second*, having found that federal law necessarily governed, the

12   court recognized that with respect to *domestic* emissions, Congress displaced "the federal

13   common law of nuisance with a well-defined and robust statutory and regulatory scheme of

14   environmental law" when it enacted the Clean Air Act.  *Id.* at 97.  As a result, "the Clean Air

15   Act displaced the City's common law damages claims." *Id.* at 96.  *Third*, insofar as the claims

16   targeted *foreign* emissions, the court held that foreign policy considerations foreclosed any

17   federal common-law remedy.  *Id.* at 100.

18          Because this case is virtually identical to *City of New York*, and presents the same

19   concerns and policy implications that the Second Circuit identified, the Second Circuit's

20   analysis applies with equal force here.  Therefore, the Court should dismiss this case for the

21   same reasons the Second Circuit affirmed dismissal.

22          In the alternative, even if Plaintiff's claims were governed by state law (they are not),

23   they would still need to be dismissed as preempted under the Clean Air Act (for domestic

24   emissions) and the foreign affairs doctrine (for foreign emissions).  The result is the same even

25   if Plaintiff tries to recast its claims as resting on allegedly misleading promotion of fossil fuels,

26   rather than their production and use.  The dismissed complaint in *City of New York* contained

27   similar allegations.  Any claims based on alleged deception are still inextricably connected with

28   the combustion of fossil fuels and the emission of greenhouse gases.  And even if they were not,

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

4

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

1   to the extent those claims are based on any supposed deception, they fail for the separate and

2   independent reason that they do not satisfy the pleading requirements of Rule 9(b) of the Federal

3   Rules of Civil Procedure.

4   ## II.    BACKGROUND

5       Plaintiff's lawsuit is another in a long series of climate change-related nuisance actions

6   that "seek[] to impose liability and damages on a scale unlike any prior environmental pollution

7   case." *Native Vill. of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 876 (N.D. Cal. 2009)

8   ("*Kivalina I*"), *aff'd*, *Kivalina II*, 696 F.3d 849 (9th Cir. 2012).   Courts have consistently, and

9   properly, dismissed all such claims.   The first such lawsuit asserted nuisance claims against

10  automobile companies for alleged contributions to climate change.   *See California v. Gen.*

11  *Motors Corp.*, 2007 WL 2726871 (N.D. Cal. Sept. 17, 2007) (dismissing state and federal

12  common-law nuisance claims against automakers based on emissions for failing to state a claim

13  and as non-justiciable).   After that failure, the next round of litigation brought claims against

14  direct emitters such as power companies, but that strategy also failed.   *See AEP*, 564 U.S. at

15  424–29 (holding that claims seeking abatement of alleged public nuisance of climate change fail

16  because the federal common law of interstate emissions was displaced by the Clean Air Act);

17  *Kivalina I*, 663 F. Supp. 2d at 863 (dismissing federal common-law nuisance claims against

18  energy companies because they were non-justiciable and for lack of standing).

19      Now, plaintiffs have resorted to climate change claims against companies that supply the

20  energy that people use—claims that other courts have already declared meritless.   Over the past

21  four years, various municipalities and several states across the country have brought similar tort

22  actions seeking damages for the alleged impacts of climate change.   The two courts that have

23  reached the merits of those actions have both dismissed them as legally nonviable.   *See City of*

24  *New York*, 993 F.3d at 103; *City of Oakland*, 325 F. Supp. 3d at 1029.[5]

25

26      [5]   The Ninth Circuit held that the district court lacked jurisdiction because "[a]t the time of removal, [the]
    complaint asserted only a single cause of action for public nuisance under California law," 969 F.3d at 906, and no

27  "exception to the well-pleaded complaint rule applie[d] to the Cities' original complaints," *id.* at 908.   Accordingly,
    the Ninth Circuit's decision is not relevant here, where federal jurisdiction is not disputed and Defendants are

28  challenging the *merits* of the lawsuit.

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim          5
Case No. 2:18-CV-00758-RSL

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

As in those cases, Plaintiff here asserts state-law claims against "the five, largest investor-owned producers of fossil fuels in the world, as measured by the cumulative carbon and methane pollution generated from the use of their fossil fuels," Compl. ¶ 143(b),[6] on the ground that the greenhouse gases emitted from those fuels globally are causing climate change-related harms within its borders.  According to Plaintiff, "[t]he use of fossil fuels—oil, natural gas, and coal—is the primary source of the greenhouse gas pollution that causes global warming[.]" *Id.* ¶ 2; *see also id.* ¶ 122 ("Production of fossil fuels for combustion causes global warming."); *id.* ("Carbon dioxide is by far the most important greenhouse gas because of the combustion of massive amounts of fossil fuels."); *id.* ¶ 137 ("Most of this warming has occurred since 1970. GHG pollution from the burning of fossil fuels is the dominant cause."); *id.* ¶ 165 (noting that the IPCC has "confirmed the causal link between planetary warming and anthropogenic greenhouse gas emissions").  Plaintiff alleges that "Defendants are collectively responsible, through their production, marketing, and sale of fossil fuels, for over 11% of all the carbon and methane pollution from industrial sources that has accumulated in the atmosphere since the dawn of the Industrial Revolution."  *Id.* ¶ 143(c).

Plaintiff further alleges that "[o]ngoing and future warming caused by past and ongoing use of massive quantities of fossil fuels will cause increasingly severe harm to King County through accelerating sea level rise, among other impacts."  *Id.* ¶ 138; *see also id.* ¶ 198 ("Pervasive fossil fuel combustion and greenhouse gas emissions to date will cause ongoing and future harms regardless of future fossil fuel combustion or future greenhouse gas emissions.").  And Plaintiff asserts that these harms can be avoided only by reducing global greenhouse gas emissions:  "King County is already experiencing, and working to abate, current harms caused by climate change.  King County's commitment to confronting climate change is documented in the County's Strategic Climate Action Plan . . . , which identifies actions needed to reduce

---

[6] Plaintiff ignores corporate separateness and improperly aggregates the activities of each Defendant's subsidiaries and affiliates.  *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070–71 (9th Cir. 2015).

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

6

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

greenhouse gas emissions and reduce climate risks to County operations, infrastructure, and residents." *Id.* ¶ 195.

Plaintiff purports to bring claims under Washington state law for public nuisance, *see id.* ¶¶ 204–13, and trespass, *see id.* ¶¶ 214–26. It seeks relief in the form of "an abatement fund remedy to be paid for by Defendants to provide for infrastructure, costs of studying and planning, and other costs in King County necessary for King County to adapt to global warming impacts"; "[c]ompensatory damages in an amount . . . of the costs of actions King County has already taken, is currently taking, and needs to take to protect King County infrastructure and property, and to protect the public health, safety, and property of its residents from the impacts of climate change"; attorney's fees; and other sums. *Id.*, Prayer for Relief.

## III.   LEGAL STANDARD

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). After stripping away any "legal conclusions" ands "conclusory statements," the Court, relying on its "judicial experience and common sense," *id.* at 678–79, must dismiss if the remaining allegations fail to "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Dismissal is also appropriate if the claims are barred as a matter of law, such as where they are displaced or preempted by federal law, *AEP*, 564 U.S. at 423; infringe on the Executive's foreign affairs power, *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 429 (2003); are barred by the Constitution, *BMW of N. Am. v. Gore*, 517 U.S. 559, 571, 585 (1996); or are non-justiciable, *Saldana v. Occidental Petroleum Corp.*, 774 F.3d 544, 545 (9th Cir. 2014).

Furthermore, Federal Rule of Civil Procedure 9(b) is implicated by factual allegations that "necessarily constitute fraud (even if the word 'fraud' is not used)," *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003), and Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b)'s particularity requirement, the plaintiff must allege the 'who, what, where, when, and how' of the charged misconduct." *Bronzich v. Persels &*

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

7

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

1    *Assocs., LLC*, 2011 WL 2119372, at \*4 (E.D. Wash. May 27, 2011) (quoting *Cooper v. Pickett*,

2    137 F.3d 616, 627 (9th Cir. 1997)).

3                                    **IV.    ARGUMENT**

4            Plaintiff's claims should be dismissed.  Although ostensibly pleaded under state law,

5    Plaintiff's claims are *necessarily governed by federal common law* because they concern

6    interstate and international pollution and therefore implicate federal interests that necessitate a

7    uniform rule of decision.  And *federal common law does not provide a remedy* for harms

8    allegedly attributable to greenhouse gas emissions because those remedies have been displaced

9    by the Clean Air Act to the extent they involve domestic emissions, and because foreign policy

10   considerations prevent extraterritorial application of federal common law.

11           Even if Plaintiff's claims were governed by state law (they are not), they are preempted

12   because applying Washington state law to Defendants' conduct would conflict with the federal

13   policies embodied in the Clean Air Act and the Executive Branch's foreign policy prerogatives.

14   Moreover, to the extent Plaintiff's claims are based on Defendants' alleged deception in the

15   promotion of fossil fuels, federal law would still apply (and provide no remedy) because

16   Plaintiff's alleged injuries are still entirely based on worldwide greenhouse gas emissions arising

17   from the production, marketing, sale, and use of fossil fuels.  In addition, to the extent Plaintiff's

18   claims sound in fraud, they should be dismissed for the independent reason that they fail to

19   satisfy the heightened pleading standard set forth in Rule 9(b).

20   **A.    Plaintiff's Claims Are Necessarily Governed By Federal Common Law Because
            They Implicate Federal Interests That Necessitate A Uniform Rule Of Decision,**

21   **And Federal Law Provides Plaintiff With No Remedy.**

22           Plaintiff's claims are necessarily governed by federal law, which does not provide a right

23   to relief for harms arising out of global greenhouse gas emissions.  The Court should, therefore,

24   dismiss Plaintiff's Complaint for failure to state a claim, applying the same three-step analysis

25   that the Second Circuit applied in affirming the dismissal of a nearly identical climate change-

26   related action on the pleadings.  *First*, notwithstanding the fact that Plaintiff pleads its claims

27   under state law, those claims are necessarily governed by federal common law because they seek

28   to impose liability for harms allegedly caused by interstate and international emissions, raising

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim                    8
Case No. 2:18-CV-00758-RSL

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

uniquely federal interests in uniformity and federalism that preclude application of state law. *Second*, to the extent Plaintiff's federal common law claims target *domestic* emissions, they are displaced by the Clean Air Act, which does not provide Plaintiff a remedy in tort.  *Third*, to the extent Plaintiff's federal common law claims target *foreign* emissions, they are also invalid because they are impermissibly extraterritorial and would unduly impinge on the political branches' exclusive authority over foreign policy.

### 1. Plaintiff's Claims Are Exclusively Governed By Federal Law.

Plaintiff's claims are exclusively subject to federal—not state—law because they seek to impose liability based on transboundary and international emissions.  The Supreme Court has consistently admonished that "where there is an overriding federal interest in the need for a uniform rule of decision," *Illinois v. City of Milwaukee*, 406 U.S. 91, 105 n.6 (1972) ("*Milwaukee I*"), "state law cannot be used," *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 313 n.7 (1981) ("*Milwaukee II*").  Interstate pollution is one such area: "When we deal with air and water in their ambient or interstate aspects, there is a federal common law." *Milwaukee I*, 406 U.S. at 103.  As the Supreme Court explained, "[f]ederal common law and not the varying common law of the individual States is . . . necessary to be recognized as a basis for dealing in uniform standard with the environmental rights of a State against improper impairment by sources outside its domain." *Id.* at 107 n.9.  In fact, as the Second Circuit noted with respect to the nearly identical claims asserted by the City of New York, because these claims "implicat[e] the conflicting rights of [s]tates [and] our relations with foreign nations, this case poses the *quintessential example* of when federal common law is needed." *City of New York*, 993 F.3d at 92 (emphasis added) (quoting *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981)).  "[T]he basic scheme of the Constitution . . . demands" that federal common law apply in these circumstances. *AEP*, 564 U.S. at 421.

The Supreme Court has squarely held that claims asserting climate change-related injuries resulting from greenhouse gas emissions—such as the claims asserted by Plaintiff here—are governed by federal law.  *See AEP*, 564 U.S. at 421–22.  In *AEP*, eight States and various other plaintiffs sued five electric utility companies, contending that "the defendants'

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

9

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

carbon-dioxide emissions" had substantially contributed to climate change, thereby "creat[ing] a 'substantial and unreasonable interference with public rights,' in violation of the federal common law of interstate nuisance, or, in the alternative, of state tort law." *Id.* at 418.  The Supreme Court held that such claims necessarily require "federal law governance" and that "borrowing the law of a particular State would be inappropriate" for such claims. *Id.* at 421, 422.

The Second Circuit drew on *AEP* and other cases that "ha[ve] applied federal law to disputes involving interstate air or water pollution" in concluding that federal common law necessarily governed the City of New York's purportedly state-law claims. *City of New York*, 993 F.3d at 91 (collecting cases).  The Second Circuit recognized that "federal common law exists in only [a] 'few and restricted' enclaves," *id.* at 89, including "'those in which a federal rule of decision is necessary to protect uniquely federal interests,'" *id.* at 90.  But it concluded that claims implicating global climate change fit within the narrow purview of federal common law because "'[g]reenhouse gases once emitted become well mixed in the atmosphere,'" such that "'emissions in [New York or] New Jersey may contribute no more to flooding in New York than emissions in China.'"  *Id.* at 92.  And because different states (and countries) will have different energy and environmental policies within their borders, climate change-related litigation "implicate[s] two federal interests that are incompatible with the application of state law: (i) the 'overriding . . . need for a uniform rule of decision' on matters influencing national energy and environmental policy, and (ii) 'basic interests of federalism.'"  *Id.* at 91–92; *see also id.* at 93 ("[A]s states will invariably differ in their assessment of the proper balance between these national and international objectives, there is a real risk that subjecting the Producers' global operations to a welter of different states' laws would undermine important federal policy choices.").  In light of this well-established principle, the Second Circuit had no difficulty resolving the question "whether a nuisance suit seeking to recover damages for the harms caused by global greenhouse gas emissions may proceed under New York law.  Our answer is simple: no." *Id.*  Indeed, "[s]uch a sprawling case is simply beyond the limits of state law." *Id.*

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

10

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

So, too, is this case, which is on all fours with *City of New York*.  Indeed, the facts that the Second Circuit found dispositive in that case are virtually identical to the facts alleged by Plaintiff here:

| Second Circuit's Reasoning | Plaintiff's Allegations |
|---|---|
| The City's claims "stem[med] from the Producers' production, promotion, and sale of fossil fuels."  993 F.3d at 88. | "Defendants' production and promotion of massive quantities of fossil fuels, and their promotion of those fossil fuels' pervasive use, ha[ve] caused . . . global warming-induced sea level rise and other climate change hazards, a public nuisance in King County."  Compl. ¶ 206. |
| "[T]he City d[id] not seek to hold the Producers liable for the effects of emissions released in New York, or even in New York's neighboring states," but rather "intend[ed] to hold the Producers liable, under New York law, for the effects of emissions made around the globe over the past several hundred years."  993 F.3d at 92. | "Defendants are collectively responsible, through their production, marketing, and sale of fossil fuels, for over 11% of all the carbon and methane pollution from industrial sources that has accumulated in the atmosphere since the dawn of the Industrial Revolution," Compl. ¶ 143(c), and "[t]he cumulative greenhouse gases in the atmosphere attributable to each Defendant ha[ve] increased the global temperature and contributed to sea level rise, including in King County," *id.* ¶ 141. |
| The City sought "compensatory damages for the past and future costs of climate-proofing its infrastructure and property."  993 F.3d at 88; *see also id.* at 93 ("[W]hile the City is not expressly seeking to impose a standard of care or emission restrictions on the Producers . . . [,] [i]f the Producers want to avoid all liability, then their only solution would be to cease global production altogether."). | Plaintiff seeks damages to recover the "substantial dollars to mitigate the damage caused by the nuisance," including "[b]uilding infrastructure to protect King County and its residents, [which] will, upon information and belief, cost hundreds of millions of dollars."  Compl. ¶ 213. |

Moreover, like the City of New York, Plaintiff here seeks to avoid established law rejecting prior climate change suits by pursuing a theory of injury that is *even more attenuated* than the theory asserted unsuccessfully in *AEP* and *Kivalina II*.  Instead of suing companies for their own emissions (such as from power plants), Plaintiff here has sued companies that produce

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

11

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

or sell fossil fuels that eventually are combusted by billions of end users around the world (including Plaintiff itself), resulting in the global emissions that allegedly contribute to climate change and caused Plaintiff's injuries. But the Second Circuit made clear that no matter what aspect of a defendant's conduct a climate-change plaintiff professes to target in its complaint, its alleged injuries are necessarily caused by cumulative global greenhouse gas emissions. *City of New York*, 993 F.3d at 91, 97 (rejecting the notion that the case was "merely a local spat about the City's eroding shoreline"). "Artful pleading cannot transform the City's complaint into anything other than a suit over global greenhouse gas emissions. It is precisely *because* fossil fuels emit greenhouse gases—which collectively 'exacerbate global warming'—that the City is seeking damages." *Id.* at 91. The court observed that the "Complaint whipsaws between disavowing any intent to address emissions and identifying such emissions as the singular source of the City's harm. But the City cannot have it both ways." *Id.* Put simply, Plaintiff's alleged harms are the result of global greenhouse gas emissions.

For all these reasons, *Milwaukee I*, *Milwaukee II*, *AEP*, and *City of New York* compel the conclusion that Plaintiff's claims "must be brought under federal common law." *Id.* at 94.

### 2. Plaintiff's Claims Targeting Domestic Emissions Are Displaced By The Clean Air Act.

Although claims based on global greenhouse gas emissions are necessarily subject to federal law, that answers only the first part of the inquiry. Once the Court confirms that federal law governs, the Court must then determine whether Plaintiff has stated a valid claim under federal law. It has not. The Supreme Court, the Ninth Circuit, and the Second Circuit have all held that a federal common-law claim alleging harms arising from domestic interstate greenhouse gas emissions *necessarily* fails because Congress displaced any such remedies when it enacted the Clean Air Act, which comprehensively regulates interstate emissions but provides no cause of action for emissions-related harms. *See AEP*, 564 U.S. at 423–29; *Kivalina II*, 696 F.3d at 856–58 ("[F]ederal common law does not provide a remedy" "when federal statutes directly answer the federal question[.]"); *City of New York*, 993 F.3d at 98 ("[F]ederal common law claims concerning domestic greenhouse gas emissions are displaced by statute.").

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

12

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

The Second Circuit held that federal common-law claims for harms caused by greenhouse gas emissions are displaced by statute.  "Congress displaces federal common law when it passes a statute that 'speaks directly to the question' that the judge-made rule was designed to answer."  *City of New York*, 993 F.3d at 95 (quoting *AEP*, 564 U.S. at 424).  The Second Circuit explained that "[s]uch displacement requires a showing that 'Congress has provided a sufficient legislative solution to the particular [issue] to warrant a conclusion that [the] legislation has occupied the field to the exclusion of federal common law.'"  *Id.* (quoting *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 777 (7th Cir. 2011)).  Congress did just that by enacting the Clean Air Act, which speaks directly to domestic transboundary emissions, and, as a result, "the Clean Air Act displaces federal common law claims concerned with domestic greenhouse gas emissions."  *Id.*

The Second Circuit has built on two preceding cases from the Supreme Court and the Ninth Circuit.  In *AEP*, the Supreme Court recognized that because greenhouse gas emissions "qualify as air pollution subject to regulation under the [Clean Air] Act," *AEP*, 564 U.S. at 424 (citing *Massachusetts v. EPA*, 549 U.S. 497, 528–29 (2007)), "the Clean Air Act and the EPA actions it authorizes displace any federal common law right to seek abatement of carbon-dioxide emissions from fossil-fuel fired power plants," *id.*  And in *Kivalina II*, the Ninth Circuit concluded that, because *AEP* established that "Congress has directly addressed the issue of domestic greenhouse gas emissions from stationary sources and has therefore displaced federal common law," *AEP* required dismissal of public nuisance claims brought by local governmental entities against a broad array of oil, gas, and coal companies (many of which are named as Defendants here).  696 F.3d at 856–58.  This is so even where plaintiffs seek "damages, rather than abatement."  *City of New York*, 993 F.3d at 96; *see also Kivalina II*, 696 F.3d at 853.  "[W]hen *AEP* concluded that the Clean Air Act preempted 'common law public nuisance abatement actions,' it also 'extinguished [the *Kivalina* plaintiff's] federal common law public nuisance damage action.'"  *City of New York*, 993 F.3d at 96 (quoting *Kivalina II*, 696 F.3d at 853).  Under *AEP* and *Kivalina II*, Plaintiff's claims are plainly governed and precluded by federal law.  *See AEP*, 564 U.S. at 421–22; *Kivalina II*, 696 F.3d at 856.

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

13

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Relying on *AEP* and *Kivalina II*, the Second Circuit held that the City of New York's claims based on domestic greenhouse gas emissions were "extinguished" because the Clean Air Act displaced any such federal common-law claims. *See City of New York*, 993 F.3d at 95–98. The same result follows here. Just as in *City of New York*, *AEP*, and *Kivalina II*, Plaintiff is suing for injuries allegedly caused by excessive worldwide *emissions*.[7] Such claims are exclusively governed by federal law, but any federal common law claim is displaced by the Clean Air Act.

That Congress displaced the federal common law of nuisance "with a well-defined and robust statutory and regulatory scheme of environmental law is by no means surprising." *City of New York*, 993 F.3d at 97. "Numerous courts have bemoaned the 'often . . . vague and indeterminate standards' attached to nuisance law." *Id.* (quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 496 (1987)). And given the "complex balancing" of competing interests that are implicated, *AEP*, 564 U.S. at 428, it is fitting that the "worldwide problem of global warming should be determined by our political branches, not by our judiciary," *City of Oakland*, 325 F. Supp. 3d at 1029. Congress enacted the Clean Air Act because it determined that "an expert agency, here, EPA, [i]s best suited to serve as primary regulator of greenhouse gas emissions." *AEP*, 564 U.S. at 428. Thus, Plaintiff's concerns about emissions-related harms "must rest in the hands of the legislative and executive branches of our government, not the federal common law." *Kivalina II*, 696 F.3d at 858.

Because Plaintiff seeks to hold oil and gas companies "liable for emissions," as was the case in *City of New York*, the Clean Air Act dictates that Defendants "cannot be sued under the

---

[7]  *See, e.g.*, Compl. ¶ 2 ("The use of fossil fuels—oil, natural gas, and coal—is the primary source of the greenhouse gas pollution that causes global warming."); *id.* ¶ 122 ("Production of fossil fuels for combustion causes global warming. When used as intended, fossil fuels release greenhouse gases, including carbon dioxide ($CO_2$) and methane, which trap atmospheric heat and increase global temperatures."); *id.* ¶ 140 ("For many years, Defendants have produced massive quantities of fossil fuels that, when combusted, emit carbon dioxide, the most important greenhouse gas."); *id.* ¶ 141 ("Each defendant has produced fossil fuels, which are used exactly as intended and emit carbon dioxide, a greenhouse gas."); *id.* ¶ 198 ("Pervasive fossil fuel combustion and greenhouse gas emissions to date will cause ongoing and future harms regardless of fossil fuel combustion or future greenhouse gas emissions."); *id.* ¶ 199 ("The risk of harm to King County and its citizens will increase, just as rising sea levels and other climate change impacts will continue due to past and current greenhouse gas emissions.").

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

14

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

federal common law," and thus Plaintiff's claims must be dismissed.  *City of New York*, 993 F.3d at 97 (quoting *City of Oakland*, 325 F. Supp. 3d at 1024).[8]

### 3. Plaintiff's Claims Targeting Foreign Emissions Are Impermissibly Extraterritorial.

Plaintiff's claims of injury based on *foreign* emissions are also barred.  Even if there is no "clear indication" that the Clean Air Act was meant to apply *outside* of the territorial jurisdiction of the United States, "that does not mean that . . . claims [for harms caused by foreign emissions] may proceed as a matter of federal common law."  *City of New York*, 993 F.3d at 100 (citations omitted).  In fact, as the Second Circuit has made clear, "a federal common law cause of action targeting emissions emanating from beyond our national borders" is not viable because "foreign policy concerns foreclose" any such claims.  *Id.* at 101.

Judicial restraint is necessary when addressing foreign emissions because of "concerns over separation of powers, intrusion on the political branches' monopoly over foreign policy, and judicial caution with respect to creating (or extending) federal common law causes of action."  *Id.* at 102.  The Supreme Court has explained that "the danger of unwarranted judicial interference in the conduct of foreign policy," which underlies the presumption against extraterritorially in the statutory context, "is magnified" where "the question is not what Congress has done but instead what courts may do."  *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013).  To hold Defendants here "accountable for purely foreign activity . . . would require them to internalize the costs of climate change and would presumably affect the price and production of fossil fuels abroad," "bypass[ing] the various diplomatic channels that the United States uses to address" climate change.  *City of New York*, 993 F.3d at 103.  The

---

[8]  Crucially, the displacement of federal common law does not resuscitate the state-law claims pleaded in Plaintiff's Complaint because *those claims never existed*.  It is impossible to "resuscitate" something that never existed in the first place.  Claims based on worldwide emissions give rise to federal common law precisely because "the interstate or international nature of the controversy makes it inappropriate for state law to control," and thus "our federal system does not permit the controversy to be resolved under state law."  *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981).  In *City of New York*, the plaintiff argued that, once federal common law has been displaced, state-law claims "may snap back into action unless specifically preempted by statute."  994 F.3d at 98.  But the Second Circuit rejected this argument, explaining that "state law does not suddenly become presumptively competent to address issues that demand a unified federal standard simply because Congress saw fit to displace a federal court-made standard with a legislative one."  *City of New York*, 993 F.3d at 98.

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

15

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Second Circuit found that "[s]uch an outcome would obviously sow confusion and needlessly complicate the nation's foreign policy, while clearly infringing on the prerogatives of the political branches." *Id.* "[T]he need for judicial caution in the face of delicate foreign policy decisions" dictates that Plaintiff cannot state a claim for foreign emissions under federal common law. *City of New York*, 993 F.3d at 104 (citing *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013); *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1408 (2018) ("The political branches . . . surely are better positioned than the Judiciary to determine if corporate liability would, or would not, create special risks of disrupting good relations with foreign governments.")). Accordingly, to the extent Plaintiff's claims are based on foreign emissions, they too should be dismissed.

**B.      In The Alternative, Plaintiff's Common-Law Claims Are Preempted By The Clean Air Act And The Foreign Affairs Power Because They Stand As An Obstacle To The Accomplishment Of Federal Objectives.**

Even if Plaintiff's claims were governed by state law (which they are not), they would be preempted by the Clean Air Act and the foreign-affairs doctrine because the claims seek to apply state law to out-of-state and international sources of greenhouse gas emissions.

A court "will find preemption . . . where 'under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes of Congress.'" *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000). This is just such a case.

The Supreme Court has already held in *Ouellette* that the Clean Water Act "pre-empts state law to the extent that the state law is applied to an out-of-state point source." 479 U.S. at 500. There, "a group of property owners who reside[d] or lease[d] land on the Vermont shore" of Lake Champlain filed a class action against International Paper Company, which operated a pulp and paper mill on the New York side of the lake, "claiming, *inter alia*, that [its] discharge of effluents constituted a 'continuing nuisance' under Vermont common law." *Id.* at 484. Although the Court acknowledged that the Clean Water Act did not expressly preempt state-law suits like the one asserted by the plaintiffs, it emphasized that preemption "may be presumed when the federal legislation is 'sufficiently comprehensive to make reasonable the inference that

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

16

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

1   Congress left no room for supplementary state regulation.'" *Id.* at 491.  And the Clean Water

2   Act was certainly comprehensive, "'establish[ing] an all-encompassing program of water

3   pollution regulation'" that "applies to all point sources and virtually all bodies of water" and

4   "provides its own remedies, including civil and criminal fines for permit violations, and 'citizen

5   suits' that allow individuals (including those from affected States) to sue for injunction to

6   enforce the statute." *Id.* at 492.

7          The Court acknowledged that the Clean Water Act carved out some space for state

8   involvement.  For example, the statute "provides that the Federal Government may delegate to

9   a State the authority to administer the [National Pollutant Discharge Elimination System]

10  program with respect to point sources located within the State" and allows a "source State [to]

11  require discharge limitations more stringent than those required by the Federal Government."

12  *Id.* at 489–90.  But "[w]hile source States have a strong voice in regulating their own pollution,"

13  they "only ha[ve] an advisory role in regulating pollution that originates beyond [their]

14  borders"—primarily through "notice and the opportunity to object to the proposed standards" in

15  a permit issued to an out-of-state source.  *Id.* at 490.

16         This proved crucial to the preemption analysis, as the Court reasoned that "[i]f a New

17  York source were liable for violations of Vermont law, that law could effectively override both

18  the permit requirements and the policy choices made by the source state," with the practical

19  effect of imposing different legal standards "from those approved by the EPA, even though the

20  affected State had not engaged in the same weighing of the costs and benefits." *Id.* at 495.  "The

21  inevitable result of such suits would be that Vermont and other States could do indirectly what

22  they could not do directly—regulate the conduct of out-of-state sources." *Id.* at 495.  This would

23  result in "a serious interference with the achievement of the 'full purposes and objectives of

24  Congress.'" *Id.* at 493.  Consequently, the Court "conclude[d] that the CWA precludes a court

25  from applying the law of an affected State against an out-of-state source." *Id.* at 494.

26         The reasoning of *Ouellette* applies with equal force to state common-law claims targeting

27  air, rather than water, pollution.  Like the Clean Water Act, the Clean Air Act "was intended

28  comprehensively to regulate, through guidelines and controls, the complexities of restraining

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

17

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

and curtailing modern day air pollution." *Bunker Hill Co. Lead & Zinc Smelter v. U.S. Envtl. Prot. Agency*, 658 F.2d 1280, 1284 (9th Cir. 1981). The statute "regulates pollution-generating emissions from both stationary sources, such as factories and powerplants, and moving sources, such as cars, trucks, and aircraft." *Util. Air Regulatory Grp. v. Envtl. Prot. Agency*, 573 U.S. 302, 308 (2014). Like the Clean Water Act, the Clean Air Act gives states "a meaningful role in regulating greenhouse gases and other emissions from sources within their borders," *City of New York*, 993 F.3d at 88 (citing 42 U.S.C. § 7401(a)(3)), including by "adopt[ing] plans to implement emission standards applicable to any existing [in-state] source of air pollution," *id.* (citing 42 U.S.C. § 7411(d))—plans that "may [be] more stringent" than the federal standards, *id.* (citing 42 U.S.C. § 7416). But also like the Clean Water Act, "[t]he Clean Air Act gives states a much more limited role" with respect to "pollution sources beyond their borders," typically "limit[ing] states to commenting on proposed EPA rules or on another state's emission plan." *Id.* (citing 42 U.S.C. §§ 7607(d)(5), 7475(a)(2), 7410(a)(1)).

In light of these close parallels between the two statutes, there can be little doubt that applying state law to impose liability for interstate domestic greenhouse gas emissions would conflict with the comprehensive transborder emissions regime embodied in the Clean Air Act. As the Supreme Court has explained, "[t]he appropriate amount of regulation in any particular greenhouse gas-producing sector cannot be prescribed in a vacuum," but rather, "[a]s with other questions of national or international policy, informed assessment of competing interests is required," including "the environmental benefit potentially achievable, our Nation's energy needs and the possibility of economic disruption." *AEP*, 564 U.S. at 427. In passing the Clean Air Act, "Congress delegated to EPA" the authority to weigh the competing interests and strike the appropriate balance. *Id.* at 426. It did so because "an expert agency, here, EPA, [is] best suited to serve as primary regulator of greenhouse gas emissions." *Id.* at 428. Federal judges applying common-law standards, by contrast, "lack the scientific, economic, and technological resources an agency can utilize in coping with issues of this order" and "may not commission scientific studies or convene groups of experts for advice, or issue rules under notice-and-comment procedures inviting input by any interested person, or seek the counsel of regulators

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

18

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

1   in the States where the defendants are located." *Id.* Simply put, allowing state common law to

2   govern harms allegedly attributable to pollution originating outside the state would "undermine

3   the important goals of efficiency and predictability" underlying the Clean Air Act and subject

4   energy companies "to a variety of common-law rules established by the different States"—rules

5   that "often are 'vague' and 'indeterminate.'" *Ouellette*, 479 U.S. at 496.

6          It is therefore no surprise that federal courts have routinely held that the Clean Air Act

7   preempts state common-law claims applying in-state standards to air pollution originating out

8   of state. In *Comer v. Murphy Oil USA, Inc.*, 839 F. Supp. 2d 849 (S.D. Miss. 2012), for example,

9   property owners filed a lawsuit against a number of defendants, including oil companies,

10  alleging that "the oil company defendants released by-products that led to the development and

11  increase of global warming, which produced the conditions that formed Hurricane Katrina,

12  which damaged their property." *Id.* at 852. The plaintiffs asserted "public and private nuisance,

13  trespass, and negligence claims against the defendants." *Id.* at 854. The court concluded that

14  "all of the plaintiffs' claims are preempted by the Clean Air Act." *Id.* at 868. Other federal

15  courts are in accord. *See, e.g.*, *Merrick v. Diageo Ams. Supply, Inc.*, 805 F.3d 685, 693 (6th Cir.

16  2015) ("[C]laims based on the common law of a non-source state . . . are preempted by the Clean

17  Air Act."); *Bell v. Cheswick Generating Station*, 734 F.3d 188, 194–96 & n.6 (3d Cir. 2013)

18  (same); *N.C. ex rel. Cooper v. TVA*, 615 F.3d 291, 301, 306 (4th Cir. 2010) (same).

19         The Clean Air Act contains two savings clauses, but neither affects the preemption

20  analysis. *First*, the "citizen suit savings clause" provides that "[n]othing in this section shall

21  restrict any right which any person (or class of persons) may have under any statute or common

22  law to seek enforcement of any emission standard or limitation or to seek any other relief

23  (including relief against the Administrator or a State agency)." 42 U.S.C. § 7604(e). But a

24  materially identical savings clause appears in the Clean Water Act: "Nothing in this section

25  shall restrict any right which any person (or class of persons) may have under any statute or

26  common law to seek enforcement of any effluent standard or limitation or to seek any other

27  relief (including relief against the Administrator or a State agency)." 33 U.S.C. § 1365(e). And

28  in *Ouellette*, the Supreme Court held that this provision "merely says that '[n]othing *in this*

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim                                  19
Case No. 2:18-CV-00758-RSL

1   *section*,' *i.e.*, the citizen-suit provisions, shall affect an injured party's right to seek relief under
2   state law; it does not purport to preclude pre-emption of state law by other provisions of the
3   Act." 479 U.S. at 493. So, too, here. *See Cooper*, 615 F.3d at 304 ("*Ouellette* held that the
4   Clean Water Act's savings clause, which is similar to the one found in the Clean Air Act, did
5   not preserve a broad right for states to 'undermine this carefully drawn statute through a general
6   savings clause.' . . . We thus cannot allow non-source states to ascribe to a generic savings
7   clause [in the Clean Air and Clean Water Acts] a meaning that the Supreme Court in *Ouellette*
8   held Congress never intended."); *Bell*, 734 F.3d at 195 ("[T]he citizen suit savings clause of the
9   Clean Water Act is 'virtually identical' to its counterpart in the Clean Air Act.").

10          *Second*, the "states' rights savings clause" provides that "nothing in this chapter shall
11   preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any
12   standard or limitation respecting emissions of air pollutants or (2) any requirement respecting
13   control or abatement of air pollution." 42 U.S.C. § 7416. Again, however, the Clean Water Act
14   contains a nearly identical provision: "[N]othing in this chapter shall (1) preclude or deny the
15   right of any State or political subdivision thereof or interstate agency to adopt or enforce (A) any
16   standard or limitation respecting discharges of pollutants, or (B) any requirement respecting
17   control or abatement of pollution." 33 U.S.C. § 1370. This provision "is narrowly
18   circumscribed, and has been interpreted to permit only state lawsuits brought under 'the law of
19   the [pollution's] *source* [s]tate.'" *City of New York*, 993 F.3d at 100 (alteration in original)
20   (collecting cases). No court has construed the states' rights savings clause to allow application
21   of a state's common law to emissions occurring *outside* the state.

22          Of course, the Clean Air Act cannot preempt Plaintiff's "claims to the extent they seek
23   recovery for harms caused by foreign emissions" because that statute does not apply
24   extraterritorially. *Id.* at 101. But to the extent Plaintiff's purportedly state-law claims touch
25   upon foreign emissions, they are preempted by the foreign affairs doctrine. The Supreme Court
26   has long acknowledged that "complete power over international affairs is in the national
27   government and is not and cannot be subject to any curtailment or interference on the part of the
28   several states." *United States v. Belmont*, 301 U.S. 324, 331 (1937); *see also United States v.*

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL                    20

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

1    *Pink*, 315 U.S. 203, 233 (1942) ("Power over external affairs is not shared by the States; it is

2    vested in the national government exclusively.").  For this reason, "the likelihood that state

3    legislation will produce something more than incidental effect in conflict with the express

4    foreign policy of the National Government would require preemption." *Garamendi*, 539 U.S.

5    at 419 n.11.  That is certainly the case here.  As the Second Circuit observed, "the United States

6    has worked cooperatively with foreign governments through diplomatic channels to coordinate

7    a global response to climate change and greenhouse gas emissions," *City of New York*, 993 F.3d

8    at 88, and "condoning an extraterritorial nuisance action here would . . . risk jeopardizing our

9    nation's foreign policy goals," *id.* at 103.

10        This is especially so as the United States reenters the Paris Agreement.[9]  In negotiating

11   that agreement, "[d]eveloped countries felt deeply uncomfortable with the notion of liability and

12   have consistently refused to negotiate any liability under the Convention."[10]  Although Article

13   8 of the Paris Agreement provides for loss and damage payments among countries, those

14   "obligations are of cooperative and facilitative character" and "exclud[e] any trace of the

15   proposals on legal responsibility and financial obligations" that some participants advocated.[11]

16   In fact, when the United States first entered the Paris Agreement, then-Secretary of State John

17   Kerry insisted that it preclude any liability for climate change:  "'We're not against [loss and

18   damage].  We're in favor of framing it in a way that doesn't create a legal remedy because

19   Congress will never buy into an agreement that has something like that. . . . [T]he impact of it

20   would be to kill the deal.'"[12]  The chief U.S. climate negotiator at the Paris meetings reaffirmed

21   this position:  "There's one thing that we don't accept and won't accept in this agreement and

---

[9]  *See The United States Officially Rejoins the Paris Agreement*, U.S. Department of State (Feb. 19, 2021), https://tinyurl.com/3rvz367u.

[10]  Darragh Conway, *Loss and Damage: In the Paris Agreement* 3, Climate Focus (Dec. 2015), https://tinyurl.com/y8yuuhqg.

[11]  *Id.*

[12]  Saleemul Huq & Roger-Mark De Souza, *Not Fully Lost and Damaged: How Loss and Damage Fared in the Paris Agreement*, Wilson Center (Dec. 22, 2015), https://tinyurl.com/yd6fo2gk.

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL                          21              GIBSON, DUNN & CRUTCHER LLP
                                                                        333 South Grand Avenue,
                                                                        Los Angeles, CA 90071-3197
                                                                        213.229.7000

1  that is the notion that there should be liability and compensation for loss and damage.  That's a

2  line that we can't cross."[13]

3         Plaintiff asks this Court to invoke state law to cross the line that the Executive refused

4  to cross.  But even if state law purported to sweep so broadly, it is preempted because it would

5  "frustrate the operation of the particular mechanism the President has chosen" to combat global

6  climate change.  *Garamendi*, 539 U.S. at 424; *see also Crosby*, 530 U.S. at 380 ("The fact of a

7  common end hardly neutralizes conflicting means, and the fact that some companies may be

8  able to comply with both sets of sanctions does not mean that the state Act is not at odds with

9  achievement of the federal decision about the right degree of pressure to employ.").

10 **C.     The Complaint Does Not Satisfy Federal Rule Of Civil Procedure 9(b).**

11        At times, Plaintiff appears as if it might be attempting to cast its claims as based in part

12 on Defendants' alleged deception regarding the environmental impacts of fossil fuels.  *See, e.g.*,

13 Compl. ¶ 154 ("Defendants promoted massive use of fossil fuels by misleading the public about

14 global warming[.]"); *id.* ¶ 169 (Defendants engaged in "a decades-long campaign of misleading

15 statements on global warming that primed the pump for massive use of their fossil fuel

16 products").  For the reasons explained above, this purported theory is irrelevant:  Because

17 Plaintiff's "case hinges on the link between the release of greenhouse gases and the effect those

18 emissions have on the environment," any attempt by Plaintiff to "focus on this 'earlier moment'

19 in the global warming lifecycle is merely artful pleading and does not change the substance of

20 its claims."  *City of New York*, 993 F.3d at 97.  Indeed, Plaintiff repeatedly insists that

21 "production of fossil fuels for combustion causes global warming," Compl. ¶ 122, that

22 "'emissions of greenhouse gases[] are the dominant cause of the observed warming since the

23 mid-20th century,'" *id.* ¶ 134, and that "GHG pollution from the burning of fossil fuels is the

24 dominant cause" of "[m]ost of th[e] warming [that] has occurred since 1970," *id.* ¶ 137.[14]

25

26

27 [13] Press Release, Office of the Special Envoy for Climate Change – U.S. Department of State, *COP21 Press Availability with Special Envoy Todd Stern* (Dec. 4, 2015), https://tinyurl.com/pajd8zbr.

28 [14] During oral argument on the motions to dismiss in *Oakland*, counsel for plaintiffs, who also represents Plaintiff here, acknowledged that "the primary conduct . . . that gives rise to the nuisance is the production of fossil fuels,"

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

22

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

But even if Plaintiff's Complaint could be re-characterized as centering on deception (it cannot), Plaintiff's claims should also be dismissed because the Complaint fails to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Specifically, "[t]o satisfy Rule 9(b)'s particularity requirement, the plaintiff must allege the 'who, what, where, when, and how' of the charged misconduct." *Bronzich*, 2011 WL 2119372, at *4. Further, any detrimental reliance on the allegedly false representations also must be pleaded with particularity. *See Xia Bi v. McAuliffe*, 927 F.3d 177 (4th Cir. 2019) ("How and whether a party relied on a misstatement is every bit as much a 'circumstance[] constituting fraud' as any other element."); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Benanav v. Healthy Paws Pet Ins., LLC*, 495 F. Supp. 3d 987, 995 (W.D. Wash. 2020).

Rule 9(b) is implicated by factual allegations that "necessarily constitute fraud (even if the word 'fraud' is not used)." *Vess*, 317 F.3d at 1105. Even where plaintiffs do not assert a fraud cause of action, or where fraud is not a necessary element of the claims alleged, if a plaintiff alleges "a unified course of fraudulent conduct in support of a claim," the claims are said to be "'grounded in fraud' or . . . 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id*. at 1103–04; *see also id.* at 1107 ("When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim."); *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1058 (W.D. Wash. 2020) (holding that a claim under the Washington Consumer Protection Act was "subject to Rule 9(b)'s heightened particularity requirement" because "Plaintiff repeatedly invoke[d] claims of fraud, and state[d] that Defendants' pricing was an 'overarching fraudulent scheme' that Defendants employed as part of a 'marketing plan'").

---

No. 17-cv-6011, Dkt. 265 at 63:20–21, and that "any such promotion remained merely a 'plus factor'" to plaintiffs' theory, *id.*, Dkt. 283 at 6.

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

23

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

Here, too, Plaintiff's Complaint alleges, at times, that Defendants engaged in a "campaign of misleading statements" and misrepresentation, *see, e.g.*, Compl. ¶ 169, thereby triggering the pleading requirements of Rule 9(b).   For example, Plaintiff alleges that "Defendants promoted massive use of fossil fuels by misleading the public about global warming," *id.* ¶ 154, and "promote[d] their fossil fuel products by downplaying the harms and risks of global warming," *id.* ¶ 155; *see also id.* ¶ 6 ("Defendants' promotion of fossil fuels has also entailed denying mainstream climate science or downplaying the risks of global warming.").

Notwithstanding these allegations, Plaintiff fails to comply with Rule 9(b) and has not purported to comprehensively identify, let alone with particularity, the allegedly deceptive statements on which it bases its claims.   Plaintiff points to a few unremarkable marketing statements made by Defendants that note the importance of fossil fuels in powering modern society.  *See, e.g.*, Compl. ¶ 169(b) (complaining that one Defendant's website "states: 'We are helping to meet the world's growing energy demand while limiting $CO_2$ emissions, by delivering more cleaner-burning natural gas'"); *id.* ¶ 169(e) (alleging that another Defendant "state[s] that it 'responsibly suppl[ies] the energy that powers modern life'" and "has the following advertising slogan on its website: 'Providing energy to improve quality of life'").   But the Complaint does not assert that these statements are themselves misleading, and moreover, for *some* Defendants, it does not identify *any* allegedly misleading statements that they purportedly made.  These deficiencies do not satisfy Rule 9(b)'s purpose of "inform[ing] each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *see also id.* (Plaintiff "must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.'"); *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (finding that the complaint did not satisfy Rule 9(b) where "Plaintiffs vaguely allege that defendants made these misrepresentations '[i]n the course of marketing' the plans to plaintiffs over a period of eight years" but "do not allege the details of these misrepresentations, such as when defendants made them, where or how

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

24

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

1  defendants made them, to whom they were made, or the specific content of the

2  misrepresentations").

3  The Complaint also fails to specify whether and how Plaintiff or anyone else, in

4  Washington or elsewhere, even heard—let alone detrimentally relied on—any Defendant's

5  alleged misrepresentations, deceptions, or concealment. *See Kearns*, 567 F.3d at 1125–26

6  (affirming dismissal where plaintiff failed to "specify which sales material he relied upon");

7  *Benanav*, 495 F. Supp. 3d at 995 ("[A] plaintiff pleading under Rule 9(b) must also identify

8  which fraudulent statements were relied upon . . . ."). In fact, the words "rely," "relied," and

9  "reliance" appear nowhere in Plaintiff's Complaint. Plaintiff's vague and conclusory assertions

10  that Defendants' conduct "primed the pump for massive use of their fossil fuel products,"

11  Compl. ¶ 169, are insufficient to plead reliance with the specificity required by Rule 9(b).

12  To the extent Plaintiff's claims are predicated on an underlying fraud, it makes no

13  difference that reliance is not an element of Plaintiff's claims. *See Kearns*, 567 F.3d at 1125–

14  26 (affirming dismissal for failure to plead reliance with specificity, even though "fraud [wa]s

15  not a necessary element of [plaintiff's claims]"); *see also United Food & Com. Workers Cent.*

16  *Pennsylvania & Reg'l Health & Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255, 257 (9th Cir.

17  2010) (finding that "complaint sounded in fraud" and therefore affirming dismissal because

18  plaintiff failed to plead "an adequate theory of causation or reliance" as to "the complaint in its

19  entirety, including its UCL 'unlawful' and 'unfair' claims" (citing *Kearns*, 567 F.3d at 1125–

20  26)). In any event, causation *is* an element of each of Plaintiff's claims, and Plaintiff cannot

21  adequately allege causation without alleging how Defendants' alleged misrepresentations link

22  up with the increased greenhouse gas emissions and resulting climate change that Plaintiff

23  claims caused its injuries.

24  Rule 9(b) was designed to protect against exactly the type of generalized allegations

25  Plaintiff makes here, which fail "to 'give defendants notice of the particular misconduct . . . so

26  that they can defend against the charge and not just deny that they have done anything wrong.'"

27  *Clark v. Eddie Bauer LLC*, 2021 WL 1222521, at *3 (W.D. Wash. Apr. 1, 2021) (quoting *Bly-*

28  *Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Plaintiff asserts that Defendants'

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim                    25
Case No. 2:18-CV-00758-RSL

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

alleged deception misled the public, thus increasing demand for fossil fuels and increasing global emissions. *See, e.g.*, Compl. ¶ 169. Such a theory necessarily requires Plaintiff to identify the allegedly deceptive statements that purportedly increased global demand for fossil fuels, how much they increased demand above what it otherwise would have been absent the alleged deception, and when this occurred.[15]

But the Complaint is devoid of any such allegations. The Complaint does not allege at all, much less with any particularity, that Plaintiff or consumers more generally were actually aware of and relied on Defendants' supposed misrepresentations, nor does the Complaint address how any such awareness affected global demand for fossil fuels. The Complaint thus falls short of the requirements of Rule 9(b) and should be dismissed.

**D.     The Court Should Dismiss The Complaint With Prejudice.**

The foregoing defects in Plaintiff's Complaint are fatal and the Court therefore should dismiss Plaintiff's Complaint in its entirety. Plaintiff cannot amend its pleading to cure these defects because any allegations in support of an emissions-related tort claim could not overcome the fact that such claims are barred as a matter of law. Thus, just like in *City of New York*, the Court should dismiss the Complaint with prejudice. 993 F.3d at 88; *see also Cervantes v. Countrywide Home Loans*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.").

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's claims should be dismissed with prejudice.

---

[15]  That is particularly true here given the First Amendment values that are at stake. As the Ninth Circuit has explained, under the Supreme Court's "*Noerr-Pennington* doctrine, '[t]hose who petition government for redress are generally immune from'" liability, and "[a] publicity campaign directed at the general public and seeking government action is covered by *Noerr-Pennington* immunity." *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1093 (9th Cir. 2000). Specificity is essential for Defendants—and the Court—to determine the applicability of this defense, particularly because Plaintiff's oblique references to deception and misrepresentation appear to center on speech "seeking government action" and thus would qualify for protection under the *Noerr-Pennington* doctrine.

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL                    26                    GIBSON, DUNN & CRUTCHER LLP
                                                                    333 South Grand Avenue,
                                                                    Los Angeles, CA 90071-3197
                                                                    213.229.7000

Dated:  August 23, 2021

By: **/s/ Theodore J. Boutrous, Jr.
/s/ Joshua D. Dick
/s/ Robert M. McKenna
/s/ Aaron P. Brecher
/s/ Herbert J. Stern
/s/ Joel M. Silverstein
/s/ Neal S. Manne
/s/ Erica Harris

Theodore J. Boutrous, Jr. (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  +213 229 7000
Facsimile:  +213 229 7520
E-mail:  tboutrous@gibsondunn.com

Joshua D. Dick (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:  +415 393 8200
Facsimile:  +415 393 8306
E-mail:  jdick@gibsondunn.com

Robert M. McKenna (WSBA No. 18327)
Aaron P. Brecher (WSBA NO. 47212)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
701 Fifth Ave., Suite 5600
Seattle, WA 98104
Telephone:  (206) 839 4300
Facsimile:  (206) 839 4301
E-mail:  rmckenna@orrick.com
E-mail:  abrecher@orrick.com

Herbert J. Stern (*pro hac vice*)
Joel M. Silverstein (*pro hac vice*)
STERN, KILCULLEN & RUFALO LLC
325 Columbia Turnpike, Suite 110
P.O. Box 992
Florham Park, NJ 07932-0992
Telephone:  +973 535 1900
Facsimile:  +973 535 9664
E-mail:  hstern@sgklaw.com
E-mail:  jsilverstein@sgklaw.com

Neal S. Manne (*pro hac vice*)
Erica Harris (*pro hac vice*)
Johnny W. Carter (*pro hac vice*)
SUSMAN GODFREY LLP
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone:  713.651.9366

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

27

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facsimile:  713.654.6666
E-mail:  nmanne@susmangodfrey.com
E-mail:  eharris@susmangodfrey.com
E-mail:  jcarter@susmangodfrey.com

Steven M. Shepard (*pro hac vice*)
SUSMAN GODFREY LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone:  212.729.2010
E-mail:  sshepard@susmangodfrey.com

Kemper P. Diehl (WSBA #53212)
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone:  206.516.3880
Facsimile:  206.516.3883
E-mail: kdiehl@susmangodfrey.com

*Attorneys for Defendant CHEVRON
CORPORATION*

** Pursuant to this Court's Electronic Filing
Procedure III.L, the electronic signatory has
obtained approval from all other signatories

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

28

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

1

By: /s/ Angelo J. Calfo
    /s/ Theodore V. Wells, Jr.
2
    /s/ Daniel J. Toal

3

Angelo J. Calfo (WSBA #27079)
Gabriel Reilly-Bates (WSBA #52257)
4
CALFO EAKES LLP
1301 Second Avenue, Suite 2800
5
Seattle, WA 98101
Telephone: (206) 407-2200
6
Facsimile: (206) 407-2224
E-mail: angeloc@calfoeakes.com
7

Theodore V. Wells, Jr. (*pro hac vice*)
8
Daniel J. Toal (*pro hac vice*)
Yahonnes Cleary (*pro hac vice*)
9
Caitlin Grusauskas (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
10
GARRISON LLP
1285 Avenue of the Americas
11
New York, NY 10019-6064
Telephone: (212) 373-3000
12
Facsimile: (212) 757-3990
E-Mail: twells@paulweiss.com
13
E-Mail: dtoal@paulweiss.com
E-Mail: ycleary@paulweiss.com
14
E-Mail: cgrusauskas@paulweiss.com

15

*Attorneys for Defendant EXXON MOBIL*
*CORPORATION*
16

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/ Erika H. Spanton

Erika H. Spanton (WSBA No. 46992)
BEVERIDGE & DIAMOND, P.C.
600 University Street, Suite 1601
Seattle, WA 98101
Telephone: (206) 315-4815
E-mail: espanton@bdlaw.com

David C. Frederick (*pro hac vice*)
Grace W. Knofczynski (*pro hac vice*)
Daniel S. Severson (*pro hac vice*)
KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C.
1615 M Street NW, Suite 400
Washington, DC 20036
Telephone: (202) 326-7900
E-mail: dfrederick@kellogghansen.com
E-mail: gknofczynski@kellogghansen.com
E-mail: dseverson@kellogghansen.com

*Attorneys for Defendant ROYAL DUTCH*
*SHELL PLC*

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL

29

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000

1  By: */s/ Jonathan W. Hughes*
       */s/ Matthew T. Heartney*
2      */s/ John D. Lombardo*
       */s/ Nancy Milburn*
3
   Jonathan W. Hughes (*pro hac vice*)
4  ARNOLD & PORTER KAYE SCHOLER
   LLP
5  Three Embarcadero Center, 10th Floor
   San Francisco, California  94111-4024
6  Telephone: (415) 471-3100
   Facsimile: (415) 471-3400
7  E-mail:  jonathan.hughes@arnoldporter.com

8  Matthew T. Heartney (*pro hac vice*)
   John D. Lombardo (*pro hac vice*)
9  ARNOLD & PORTER KAYE SCHOLER
   LLP
10 777 South Figueroa Street, 44th Floor
   Los Angeles, California  90017-5844
11 Telephone: (213) 243-4000
   Facsimile: (213) 243-4199
12 E-mail:  matthew.heartney@arnoldporter.com
   E-mail:  john.lombardo@arnoldporter.com
13
   Nancy Milburn (*pro hac vice*)
14 ARNOLD & PORTER KAYE SCHOLER
   LLP
15 250 West 55th Street
   New York, NY 10019-9710
16 Telephone: (212) 836-8383
   Facsimile: (212) 715-1399
17 E-mail:  nancy.milburn@arnoldporter.com

18 Ralph H. Palumbo
   ARETE LAW GROUP
19 1218 Third Avenue, Suite 2100
   Seattle, Washington  98101
20 Telephone:  (206) 428-3250
   E-Mail:  rpalumbo@aretelaw.com
21
   *Attorneys for Defendant BP P.L.C.*
22

23

24

25

26

27

28

By: */s/ Daniel A. Brown*
    */s/ Jameson R. Jones*
    */s/ Daniel R. Brody*

Daniel A. Brown, WSBA #22028
WILLIAMS, KASTNER & GIBBS PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Telephone:  (206) 628-6600
Fax:  (206) 628-6611
dbrown@williamskastner.com

Jameson R. Jones (*pro hac vice*)
Daniel R. Brody (*pro hac vice*)
BARTLIT BECK LLP
1801 Wewatta St., Suite 1200
Denver, Colorado 80202
Telephone:   303-592-3123
Facsimile:   303-592-3140
Email:  jameson.jones@bartlit-beck.com
Email:  dan.brody@bartlit-beck.com

*Attorneys for Defendant CONOCOPHILLIPS*

Defendants' Joint Renewed Motion to
Dismiss for Failure to State a Claim
Case No. 2:18-CV-00758-RSL                         30

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197
213.229.7000